UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

TD AMERITRADE, INC.,

              *Petitioner*,

- against -

EDWARD W. KELLEY,

              *Respondent*.

------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-30-16

15 Civ. 714 (PAC) (FM)

**OPINION AND ORDER
ADOPTING REPORT
AND RECOMMENDATION**

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner TD Ameritrade, Inc. ("Ameritrade") seeks an order vacating a Financial Industry Regulatory Authority ("FINRA") arbitral award (the "Award") issued in favor of Respondent Edward W. Kelley ("Kelley"). The Award requires Ameritrade to deliver to Kelley a physical share certificate for 152,380 Bancorp International Group, Inc. ("Bancorp") shares. Kelley objects and cross petitions for confirmation of the Award.

On August 1, 2016, Magistrate Judge Frank Maas issued a Report and Recommendation ("R&R") that the Award be vacated because it is currently either impossible or illegal for Ameritrade to comply with the Award; but requiring Ameritrade to continue to make good-faith efforts to comply with the Award, if and when it becomes possible and legal to do so. On August 15, 2016, Kelley filed objections, claiming that Ameritrade can satisfy the Award by either purchasing Bancorp shares on the open market or by providing Kelley with money for Kelley to purchase Bancorp shares.[1] Ameritrade does not object to the R&R.

The Court agrees that it is currently either impossible or illegal for Ameritrade to comply with the Award. Accordingly, the Court ADOPTS the R&R, and GRANTS Ameritrade's

---

[1] Ameritrade filed its response to Kelley's objections on August 29, 2016. Dkt. 64. Contrary to Kelley's assertion, Dkt. 65, Ameritrade's response was timely, Fed. R. Civ. P. 72(b)(2).

1

petition for an order vacating the Award. Ameritrade must make good-faith efforts to comply with the Award, if and when it becomes legal and possible to do so. Kelley's cross petition for confirmation is DENIED.

## BACKGROUND

### I. Relevant Entities

"Ameritrade provides brokerage services to self-directed investors." Dkt. 30 Ex. 4 at 3. "It does not provide investment recommendations or advice, but instead routes orders placed by its customers to the appropriate market." *Id.*

Bancorp is a Nevada corporation. Dkt. 30 Ex. 35 at 1. Bancorp last filed an annual report in 2008 and described itself as a "shell company" that "did not generate any revenue for the year ended December 31, 2007." *Id.*

The Depository Trust Company ("DTC") is the "largest securities depository in the world." Dkt. 30 Ex. 1 at 14. As Magistrate Judge Maas explained, "DTC functions somewhat like a bank, but rather than holding cash, keeps large quantities of securities safely in electronic form for brokers (such as Ameritrade) for the benefit of investors (such as Kelley)." R&R at 3. DTC maintains electronically deposited shares; and it can issue physical share certificates, allowing brokers to obtain the certificates on behalf of investors. *Id.* DTC can also impose "global locks" on securities. Dkt. 30 Ex. 1 at 15. A global lock "complete[ly] restrict[s] . . . all DTC services for a particular security on deposit at DTC." *Id.* at 14.

### II. Relevant Facts

On August 1, 2005, Bancorp issued a press release stating that "[t]he company ha[d] been the victim of corporate identify fraud" and that the "individuals and corporate entities involved with the illegal takeover of the company printed invalid share certificates." Dkt. 30 Ex. 4 at 72.

On August 11, 2005, DTC placed a global lock on all Bancorp shares and notified the public on August 16, 2005. Dkt. 30 Ex. 1 at 13. The global lock remains in effect today. Dkt. 30 Ex. 4 at 99; Dkt. 34 at ¶¶ 4–5.

On August 18, 2005, Kelley, using Ameritrade as his broker, purchased 152,380 shares of Bancorp's common stock bearing CUSIP Number 05968X106 ("X106 Shares") for $1,610.98 (including a transaction fee of $10.99), or $0.01050 per share. Dkt. 30 Ex. 4 at 78.

On January 6, 2006, in connection with litigation relating to the alleged illegal issuance of Bancorp shares, an Oklahoma court conducted a fairness hearing and authorized Bancorp to issue new, unregistered shares pursuant to § 3(a)(10) of the Securities Act of 1933 ("Securities Act"). Dkt. 30 Ex. 1 at 18–22. These shares bear CUSIP Number 05968X205 ("X205 Shares"). *Id.* at 3.

On November 3, 2009, after Bancorp failed to comply with the reporting requirements of the Securities Exchange Act of 1934 ("Exchange Act"), the Securities and Exchange Commission ("S.E.C.") issued an order pursuant to § 12(j) of the Exchange Act revoking "the registration of each class of registered securities" of Energy Source, Inc. (formerly known as Bancorp International Group, Inc.). Dkt. 30 Ex. 4 at 90–91.

On August 8, 2012, nearly seven years after Kelley's purchase of Bancorp shares, Kelley demanded that Ameritrade provide him with a physical share certificate for the shares. Dkt. 30 Ex. 1 at 2. On August 10, 2012, Ameritrade responded that it was unable to provide Kelley with the requested share certificate because Kelley's shares were on deposit with DTC and DTC had imposed a global lock on all Bancorp shares, making it impossible to deliver, transfer, or withdraw them from DTC. *Id.* at 11.

On May 6, 2014, Kelley initiated a FINRA arbitration proceeding against Ameritrade to compel Ameritrade to comply with his request for delivery of his Bancorp share certificate. Kelley submitted to the arbitrator two Statement of Claims, Dkt. 30 Exs. 1, 5, requesting, among other things, that the arbitrator compel Ameritrade either (i) to purchase Bancorp shares and deliver the certificate to Kelley; or (ii) to provide funds so Kelley could purchase Bancorp shares himself, Dkt. 30 Ex. 1 at 6. The sole arbitrator found in favor of Kelley, and ordered Ameritrade to (i) pay Kelley $1,610.98 in compensatory damages; (ii) reimburse Kelley $175.00 for the filing fee; and (iii) "deliver to [Kelley] a physical share certificate for 152,380 of [Bancorp] shares." Dkt. 1 at 13. Ameritrade does not contest and has complied with the monetary portion of the Award—Ameritrade paid Kelley $1,798.85 on January 20, 2015. Dkt. 30 at ¶ 20.

On January 30, 2015, Ameritrade filed its petition for an order vacating the Award requiring it to deliver the physical share certificate for 152,380 Bancorp shares. *Id.* On February 20, 2015, Kelley objected to Ameritrade's petition and cross petitioned for confirmation of the Award. Dkt. 5.

## DISCUSSION

### I.   Standard of Review

The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To accept those portions of the report to which no timely objections has been made, however, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774 (LAP),

4

2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

## II. Applicable Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, a court reviewing an arbitral award "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 688 F.3d 60, 71 (2d Cir. 2012) (citation omitted). "The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103 (2d Cir. 2013). However, "an award may be set aside if it compels the violation of law." *Perma-Line Corp. of Am. v. Sign Pictorial & Display Union, Local 230, Int'l Brotherhood of Painters & Allied Trades, AFL-CIO*, 639 F.2d 890, 895 (2d Cir. 1981).

A district court is also permitted to modify an arbitral award "[w]here the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11. "Section 11(c), which is limited to matters of form not affecting the merits of the controversy, does not license the district court to substitute its judgment for that of the arbitrators." *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980). Instead, it "allows courts to modify arbitration awards to reflect the clear intent of the arbitrator when that intent was not expressed due to error or oversight." *Vertical UK LLP v. Dundee Ltd.*, No. 10 Civ. 1173 (DAB), 2011 WL 2419859, at *4 (S.D.N.Y. June 13, 2011).

## III. Analysis

The R&R explains that there are three possible ways that Ameritrade might be able to satisfy the Award and rejects each as either illegal or impossible. First, Ameritrade would be

unable to purchase Bancorp shares or provide Kelley with the funds to purchase Bancorp shares on the open market. The S.E.C. has revoked the registration of Bancorp's shares pursuant to § 12(j) of the Exchange Act and accordingly, it is illegal for a broker to purchase or induce the purchase of securities whose registration has been revoked. Second, it is not possible for Ameritrade to transfer to Kelley the physical share certificate for his X106 shares because Kelley's shares are on deposit with DTC and subject to DTC's global lock on Bancorp shares. Finally, it would be illegal for Ameritrade to purchase newly issued shares from Bancorp pursuant to § 3(a)(10) of the Securities Act because Ameritrade would have to pay cash for the shares, and § 3(a)(10) is not available for cash-only transactions.

Kelley objects to the R&R's first two conclusions; but does not object to the conclusion regarding newly issued Bancorp shares. Kelley further asserts that the Magistrate Judge erred in not considering duties that Ameritrade allegedly breached.

### A. Bancorp Shares on the Open Market

Kelley argues that the R&R incorrectly determined that § 12(j) of the Exchange Act "makes it illegal for [Ameritrade] to . . . purchase shares of Bancorp for Kelley."[2] Dkt. 62 at 10. We disagree. As the Magistrate Judge explained, § 12(j) makes it illegal for a broker like Ameritrade to purchase revoked shares, and the S.E.C. revoked the registration of Bancorp's shares on November 3, 2009. R&R at 10–12. The fact that the X205 shares were issued pursuant to § 3(a)(10) of the Securities Act (which only exempts securities from the provisions of the Securities Act) does not exempt those shares from the reporting and registration

---

[2] Kelley also argues that *Grabowski v. TD Ameritrade*, FINRA Case No. 12-01838, shows that Ameritrade can purchase Bancorp shares because, according to Kelley, Ameritrade "was ordered to deliver a certificate for 25,000 Bancorp shares to a client in circumstances identical to Kelley's" and subsequently "purchased Bancorp shares at $0.40 per share." Dkt. 62 at 10. This is an incorrect interpretation. The claimant was ordered to purchase Bancorp shares, and Ameritrade was ordered to reimburse the claimant for his purchase. *Grabowski v. TD Ameritrade*, FINRA Case No. 12-01838.

requirements of the Exchange Act. 15 U.S.C. § 77d(a) ("Except as hereinafter expressly provided, the provisions *of this subchapter* shall not apply to any of the following classes of securities . . . ." (emphasis added)); *see also Leoni v. Rogers*, 719 F. Supp. 555, 564 (E.D. Mich. 1989).

Kelley further argues that the R&R incorrectly concluded that § 12(j) of the Securities Act makes it illegal for Ameritrade to provide "Kelley money so that he may effect a purchase [of Bancorp shares]." Dkt. 62 at 10. The Court need not decide this. Whether Ameritrade could provide Kelley with funds for Kelley to purchase Bancorp shares would only be relevant if the Court were to modify the Award. The Court will not do so.

A district court can modify an award if it is "imperfect in matter of form." 9 U.S.C. § 11(c). Here, there is no indication that the award does not "reflect the clear intent of the arbitrator when that intent was not expressed due to error or oversight," *Vertical UK LLP*, 2011 WL 2419859, at *4. Indeed, the arbitral record shows that Kelley requested that the arbitrator either compel Ameritrade to purchase the Bancorp shares directly or to reimburse Kelley for his purchase of the shares. Dkt. 30 Ex. 1 at 6. In choosing to compel Ameritrade to deliver to Kelley a Bancorp share certificate, the arbitrator necessarily rejected Kelley's alternative request. There is therefore no basis to conclude that the arbitrator's intent was not clearly reflected in the Award. As a result, the Court will not "substitute its judgment for that of the arbitrator[]" to modify the Award. *Diapulse*, 626 F.2d at 1110.

### B. Kelley's X106 Shares

Kelley argues that the R&R incorrectly found that Kelley's shares are held at DTC. Dkt. 62 at 4. Whether DTC has Kelley's shares, however, does not bear on whether Ameritrade can comply with the Award. If Ameritrade is correct that Kelley's shares are held at DTC,

Ameritrade would not be able to deliver the physical share certificate due to the global lock. And if Kelley is correct that Ameritrade impermissibly never purchased or obtained the X106 shares to begin with,[3] Ameritrade still would not be able to deliver the physical share certificate.

## C.   Alleged Breaches of Duty

Finally, Kelley objects that Magistrate Judge Maas failed to consider several alleged breaches of Ameritrade's duties or obligations, including that (i) Ameritrade should not have purchased shares subject to a global lock; (ii) Ameritrade should have obtained the X106 shares "in a manner deliverable on demand" prior to the S.E.C.'s November 3, 2009 revocation of Bancorp's registration; (iii) Ameritrade should have demanded transfer from DTC of the X106 shares following the S.E.C.'s revocation order; and (iv) in 2005, Ameritrade should have "force[d] DTC, through commencing a legal action or other means, to remove the self-imposed Global Lock." Dkt. 62 at 9, 11–13. Kelley's arguments miss the mark. Whether Ameritrade should have taken a different course of action *previously* is not relevant to the question of whether Ameritrade can *currently* provide Kelley with a physical share certificate for Bancorp shares. Clearly, it cannot.

## D.   New Issuance of Bancorp Shares

After reviewing the portions of the R&R to which Kelley raises no objection, we find there to be no clear error and adopt those portions in full. Ameritrade would not be able to obtain Bancorp shares by having Bancorp issue new shares under § 3(a)(10) of the Securities Act because the transaction would be cash only. *See* 15 U.S.C. § 77c(a)(10).

---

[3] *See* Dkt. 30 Ex. 1 at 6, 7; Dkt. 30 Ex. 5 at ¶ 14; Dkt. 14 at 6; Dkt. 35 at 7; Dkt. 50 at 8–9. We have seen nothing to support any suggestion that Ameritrade has the physical share certificate for Kelley's shares in its possession and is simply not turning it over.

8

## CONCLUSION

The Court ADOPTS the R&R. Ameritrade's motion to vacate the FINRA arbitral award is GRANTED; but Ameritrade must continue to make good-faith efforts to provide Kelley with a physical share certificate for 152,380 Bancorp shares, if and when it becomes legal and possible to do so. Kelley's cross petition to confirm is DENIED. The Clerk of Court is directed to close Case No. 15 Civ. 714.

Dated: New York, New York  
      September 30, 2016

SO ORDERED

*Paul A. Crotty* (signature)  
PAUL A. CROTTY  
United States District Judge