UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
TD AMERITRADE, INC.,                          :
                                              :          15 Civ. 714 (PAC) (BCM)
                              *Petitioner*,   :
                                              :          **OPINION & ORDER**
        - *against* -                         :
                                              :
EDWARD W. KELLEY,                             :
                                              :
                              *Respondent*.   :
-------------------------------------------------------x

        Jan Harris, *pro se*, seeks permission to intervene in this action (the "Kelley Action")

pursuant to Fed. R. Civ. P. ("Rule") 24(b)(1)(B) and obtain relief from the judgment under Rules

60(b)(4) and (5).  Mot. to Intervene & Obtain Relief, ECF No. 70 (the "Motion").  The Court

rendered a final judgment in the Kelley Action more than four years ago (over three and one-half

years before Harris filed her Motion).  Order Adopting R. & R., ECF No. 68; Clerk's Judgment,

ECF No. 69 (collectively, the "Judgment").  Because her Motion is untimely and would unduly

prejudice TD Ameritrade, Inc. ("TDA"), the Court denies Harris' request to intervene.  Because

Harris does not raise extraordinary circumstances that would warrant allowing her to bring Rule

60(b) motions as a non-party, the Court will not consider her motions under Rules 60(b)(4) and

(5).  And the Court declines, on its own motion, to vacate the Judgment.  In sum, Harris' Motion,

in its entirety, is DENIED.

## BACKGROUND

### I.    Relevant Entities

        TDA is a brokerage services provider.  Order Adopting R. & R. 2.  Harris and Edward

Kelley are TDA's customers; they both own shares of Bancorp International Group, Inc.

("Bancorp"), "which [TDA] purports to be holding on behalf of its customers . . . in its account at the Depository Trust Company."  Notice of Mot. to Intervene & Obtain Relief 1, ECF No. 70.

## II.    Relevant Facts

The Kelley Action began on January 30, 2015, when TDA filed with this Court a petition for an order vacating Kelley's arbitration award (the "Award") dated December 22, 2014.  Pet. to Vacate Arb., ECF No. 1.  In pertinent part, the Award required TDA "to deliver to Kelley a physical share certificate for 152,380 [Bancorp] shares."  Order Adopting R. & R. 1.  Kelley cross-petitioned for an order confirming the Award.  Obj., ECF No. 5.  The Court found that TDA's compliance with the Award's mandate would be either illegal or impossible and vacated the Award.  Order Adopting R. & R. 1–2, 6.  The Court also held, however, that TDA "must continue to make good-faith efforts to provide Kelley with a physical share certificate for 152,380 Bancorp shares, if and when it becomes legal and possible to do so."  *Id.* at 6.

In 2017, Harris sued TDA (and others) alleging that TDA is obligated to provide her with a physical share certificate for her 2,420,000 Bancorp shares.  *Harris v. TD Ameritrade, Inc.*, 338 F. Supp. 3d 170, 175–76 (S.D.N.Y. 2018) (the "Harris Action").  Judge Swain compelled arbitration and stayed the Harris Action pending the arbitration's results.  *Id.* at 175.

On May 18, 2020, Harris filed her Motion, seeking permission to intervene in this action and have this Court vacate its Judgment.  TDA opposed her Motion (Resp. in Opp'n, ECF No. 71) and filed a declaration in opposition (Decl. in Opp'n, ECF No. 72) on June 1.  Harris replied on June 3.  Reply Aff. in Supp., ECF No. 74.  On June 12, TDA wrote the Court to inform it of Judge Swain's order denying Harris' motions to amend her complaint and obtain a declaratory judgment along with immediate possession of her Bancorp shares, and dismissing her complaint in the Harris Action.  Letter, ECF No. 75; *see Harris v. TD Ameritrade, Inc.*, No. 17 CV 6033-

LTS-BCM, 2020 WL 3073235, at *2 (S.D.N.Y. June 10, 2020).  Harris appealed that judgment, and the Second Circuit affirmed on March 1, 2021.  *Harris v. TD Ameritrade, Inc.*, — F. App'x —, No. 20-1960, 2021 WL 772269, at *1–2 (2d Cir. Mar. 1, 2021).

In her Motion, Harris argues that (1) TDA and Kelley's agreement to arbitrate his claim for physical possession of his Bancorp shares certificate was unenforceable, rendering the Award "a legal nullity" (Motion 10); (2) because the Award was a legal nullity, neither Kelley nor TDA had a cause of action to petition this Court to confirm or vacate the Award;[1] and (3) the Judgment unlawfully allows TDA to skirt its obligation under 17 C.F.R. § 240.15c3-3 ("SEC Rule 15c3-3") to provide Kelley, Harris, and other customers with physical certificates of their fully-paid Bancorp shares upon request.  Motion 7–14.  Thus, argues Harris, the Judgment is void *ab initio* and the Court should set it aside, both because it is void and because it is no longer equitable.  Motion 14, 16.  Harris accuses the Court of "rewrit[ing] federal law" (Motion 15; *see also* Reply Aff. in Supp. 7) and "usurp[ing] the power of the legislative branch" through "giving vitality to an arbitration award where the underlying agreement to arbitrate had been declared void by Congress." (Reply Aff. in Supp. 6–7)

TDA's opposition addresses only Harris' motion to intervene but asks the Court to enter "a briefing schedule with respect to Harris'[] proposed motion to vacate the Judgment pursuant to [Rule] 60(b)" should the Court allow her to intervene.  Resp. in Opp'n 6.

---

[1] Harris claims, in various places, that the Judgment was void because the Kelley Action lacked a case or controversy (Reply Aff. in Supp. 5–6); because TDA lacked standing to file its petition (Reply Aff. in Supp. 1, 6); and because TDA and Kelley both lacked a cause of action to file petitions in this Court (Motion 14).  These claims boil down to an argument that the Court lacked subject matter jurisdiction over TDA's petition and thus could not vacate the Award.

## DISCUSSION

I.   **Applicable Law**

a.   **Subject Matter Jurisdiction**

The United States Constitution empowers federal courts to hear only "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  Thus, a federal court lacks subject matter jurisdiction over claims that do not present a case or controversy.  "A live controversy, within the Article III jurisdiction of the federal courts, requires a plaintiff seeking relief and a defendant opposing that relief."  *Amalgamated Clothing & Textile Workers Union v. J.P. Stevens & Co., Inc.*, 638 F.2d 7, 8 (2d Cir. 1980).  A federal court "may not adjudicate a case or controversy unless authorized by both Article III of the United States Constitution and a federal jurisdictional statute."  *United States v. Assa Co. Ltd.*, 934 F.3d 185, 188 (2d Cir. 2019).

Standing is part of the case-or-controversy requirement.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-MEDCO Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  Accordingly, a federal court lacks subject matter jurisdiction over a claim if the party asserting that claim does not have standing to bring it.  *Id.*  "A party may challenge subject matter jurisdiction at any time."  *Assa*, 934 F.3d at 188.

To have Article III standing, a claimant must show (1) she suffered an actual or imminent, concrete and particularized "injury in fact"; (2) which is causally connected to the defendant's actions; and (3) which a favorable decision will likely redress.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *accord Merck-MEDCO*, 433 F.3d at 198.

The Federal Arbitration Act ("FAA") is a law of the United States which allows district courts to vacate arbitration awards in certain circumstances—for example, "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  But "[t]he FAA does not 'independently confer

4

subject matter jurisdiction on the federal courts.'" *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 688 F.3d 60, 71 (2d Cir. 2012) (citation omitted).  Thus, a petitioner attempting to vacate an arbitration award in federal court under § 10 must prove an independent basis of federal subject matter jurisdiction, such as federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332.

A court has federal question jurisdiction over a § 10 petition where "the petitioner complains principally and in good faith that the award was rendered in manifest disregard of federal law." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 375 (2d Cir. 2016) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2d Cir. 2000)).  The court is also permitted to look beyond the petition itself; if the court would have had federal question jurisdiction over the underlying dispute, then the court has federal question jurisdiction over a § 10 petition to vacate the award entered on that dispute.  *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 388–89 (2d Cir. 2016).  Federal question jurisdiction, here as everywhere else, "cannot be predicated on an actual or anticipated defense." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009); *see also Doscher*, 832 F.3d at 389 ("[F]ederal courts may 'look through' § 10 petitions, applying the ordinary principles of federal-question jurisdiction to the underlying dispute as defined by *Vaden*.").

The court determines whether federal diversity jurisdiction exists "by examining the citizenship of the parties at the time the action is commenced." *Odeon Capital Grp. LLC v. Ackerman*, 149 F. Supp. 3d 480, 483 (S.D.N.Y. 2016) (citation omitted).  The court has diversity jurisdiction exists if the action is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)–(a)(1).   A corporation is deemed a citizen of

every state in which it is incorporated and the one state in which it has its principal place of business.  § 1332(c)(1).

### b.  Standards for Ruling on Harris' Motion

Courts extend *pro se* litigants special solicitude, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994), and must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  In ruling on a motion to intervene, "the court must accept as true non-conclusory allegations of the motion," but need not consider allegations that are facially frivolous.  *Dorsett v. Cty. of Nassau*, 283 F.R.D. 85, 90 (E.D.N.Y. 2012).

### c.  Permissive Intervention

A court may, on timely motion, "permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B). The district court has broad discretion in deciding whether to grant permissive intervention, *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005), "[h]owever, except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert . . . ."  *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Whether ruling on a motion to intervene as of right or by permission, courts "typically consider the same four factors," *In re Direxion Shares ETF Tr.*, 279 F.R.D. 221, 234 (S.D.N.Y. 2012), namely, whether:

> (1) the application is timely; (2) [the putative intervenor] claims "an interest relating
>
> to the property or transaction which is the subject matter of the action;" (3) [the
>
> putative intervenor] is situated such that "disposition of the action may, as a

practical matter, impair or impede [her] ability to protect [her] interests;" and (4)

[her] interest is "not adequately protected by an existing party."

*Id.* (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)).

Determining the timeliness of a motion to intervene is likewise within the district court's discretion. *Id.* When deciding whether a motion to intervene is timely, courts will consider:

> (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to the existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness.

*Id.* (quoting *MasterCard Int'l Inc.*, 471 F.3d at 390).

While timeliness is a threshold question under Rule 24(b), "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73–74 (2d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(2)). "Post-judgment intervention is generally disfavored because it usually creates delay and prejudice to the existing parties." *Dow Jones & Co., Inc. v. DOJ*, 161 F.R.D. 247, 251 (S.D.N.Y. 1995) (citing *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986)).

### d.  Non-Party Motions under Rule 60(b)

Rule 60(b) permits a court, upon a motion from "a party or its legal representative," to grant relief from a final judgment. Fed. R. Civ. P. 60(b). Thus, at first glance, it appears that a third party denied permission to intervene may not bring a Rule 60(b) motion, because the third party is neither a party nor its legal representative. But the Second Circuit has recognized that, in

limited circumstances, non-parties have a right to bring Rule 60(b) motions. *Irvin v. Harris*, 944 F.3d 63, 69 (2d Cir. 2019).

*Irvin* dealt with a Rule 60(b) movant who was not a party, but a member of an inmate class bound by a judgment that terminated a consent decree. *Id.* at 66, 67, 70. The court noted that the controlling cases on the issue of non-party Rule 60(b) motions were fact-specific and involved "extraordinary circumstances in which a non-party had interests on which the outcome of the proceedings had significant consequences . . . yet those interests had not been adequately represented during litigation, because of the peculiar structure of [the] case." *Id.* at 70 (quoting *Federman v. Artzt*, 339 F. App'x 31, 34 (2d Cir. 2009)) (alterations in original). Concluding that Irvin had met this high standard, the court held that:

> where Irvin was not notified of counsel's decision to withdraw opposition until after the termination order was entered and no named representatives of an inmate class remained incarcerated at the facility in question when a longstanding consent decree was terminated, Irvin, a member of the class, has "standing"[2] to invoke Rule 60(b) to challenge the judgment.

*Id.*

### e. The Court's Power to Vacate Void Judgments *Sua Sponte*

While Rule 60(b) contemplates that parties will bring motions under it, "nothing forbids the court to grant such relief *sua sponte*." *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001); *accord United States v. $57,162 in U.S. Currency*, No. 19-cv-7323 (AJN), 2019

---

[2] The court explained: "the Supreme Court has made clear that 'what has been called "statutory standing" in fact is not a standing issue, but simply a question of whether the particular plaintiff "has a cause of action under the statute."'" 944 F.3d at 68 n.4 (citations omitted). But for ease of reference, the court "refer[red] to Irvin's right to relief under [Rule 60(b)] as his 'standing.'" *Id.*

WL 5802290, at *2 (S.D.N.Y. Sept. 29, 2020).  Thus, a court may vacate a void judgment on its

own motion, even when no one has filed a Rule 60(b)(4) motion.  *McLearn v. Cowen & Co.*, 660

F.2d 845, 848–49 (2d Cir. 1981).  But "[a] judgment is void under Rule 60(b)(4) . . . 'only if the

court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a

manner inconsistent with due process of law.'"  *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d

180, 193 (2d Cir. 2006) (quoting *Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d

1092, 1099 (2d Cir. 1979)); *accord United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,

271 (2010) ("Rule 60(b)(4) applies only in the rare instance where a judgment is premised either

on a certain type of jurisdictional error or on a violation of due process that deprives a party of

notice or the opportunity to be heard.").

## II.   Application

### a.   Permissive Intervention is Inappropriate

Harris' Motion is untimely and threatens undue prejudice to TDA's right to rely on a

lawful, final judgment entered over four years ago.

As TDA points out, Harris knew about the Judgment no later than December 28, 2017,

when she cited the Judgment in a memorandum of law in the Harris Action.  Resp. in Opp'n 2–3.

She waited approximately 29 months from then before moving to intervene in this action.

Permitting Harris to intervene would significantly prejudice TDA, because it would have to

expend resources fighting Harris' Rule 60(b) motions.  By contrast, denying Harris' Motion

would not impose any cognizable prejudice upon her.  Harris seeks to intervene so that she can

move to vacate the Judgment, preventing TDA from citing the Judgment as favorable case law in

other lawsuits.  The Court is unaware of a single case in which a court has allowed a person to

intervene for the purpose of getting rid of unfavorable case law; denying Harris' motion thus

does not work any real prejudice against her.[3]  Nor has Harris raised any extraordinary

circumstances which might persuade the Court to determine that her Motion was timely.

Accordingly, the Court finds that Harris' Motion is untimely, and she has thus failed to satisfy

Rule 24(b)(1)(B)'s threshold requirement.

Further, Harris claims no interest in the property at issue in the Judgment, and she is not

situated such that the Judgment impaired or impeded her rights: nothing in the Judgment binds

Harris or limits her right to litigate against TDA in the Harris Action.  Finally, Kelley litigated

zealously, and if Harris' interests were not adequately represented in the Kelley Action, it was

because no one was required to represent her interests (or purported to do so).

 For these reasons, Harris' motion to intervene is DENIED.

### b.  Non-Party Rule 60(b) Motions Are Unwarranted

The facts surrounding Harris' Motion are markedly different from those in *Irvin* and

other cases in which courts allowed non-parties to bring Rule 60(b) motions.[4]  Unlike Irvin,

Harris had nothing to do with the Kelley Action when the parties were litigating it, and now has

no good reason to reopen it over four years after the Court entered its Judgment.  As already

discussed, Harris is not affected by the Judgment, except incidentally to the extent that it

supports TDA's position that delivering physical certificates of Bancorp shares is impossible or

illegal and thereby weakens her argument to the contrary.  Thus, Harris' Motion does not present

---

[3] Harris even cited the Judgment in the Harris Action in support of her position that her claim to physical certificates of Bancorp shares is non-arbitrable—an argument which Magistrate Judge Moses and Judge Swain roundly rejected.  *Harris*, 338 F. Supp. 3d at 185–86.

[4] *See Grace*, 443 F.3d at 183–89 (permitting third-party conveyees to bring Rule 60(b) motion to obtain relief from unsatisfied judgment with serious due process concerns which plaintiffs attempted to use as basis for fraudulent conveyance actions against them); *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1047–52 (2d Cir. 1982) (permitting employees to bring Rule 60(b)(6) motion to modify a settlement between the Secretary of Labor and their employer over alleged discrimination).

the kind of extraordinary circumstances that warrant allowing her to bring Rule 60(b) motions as a non-party, and her alternative request to do so is, therefore, DENIED.

### c. The Judgment is Not Void

Harris asserts two grounds upon which she claims the Judgment is void.  First, Harris argues that the Court lacked subject matter jurisdiction over TDA's petition to vacate the Award.  Second, Harris argues that the Judgment violates federal law by "rewriting" SEC Rule 15c3-3, thereby allowing TDA to avoid its obligations under SEC Rule 15c3-3.  Harris is mistaken on both counts.

First, the Court had subject matter jurisdiction over the Kelley Action.  TDA's petition to vacate the Award presented a live controversy, because TDA sought relief which Kelley opposed.  Further, TDA had Article III standing to bring the petition, because (1) it had an injury (compliance with the Award was a legal obligation, but would require TDA to break the law or do the impossible); which was (2) traceable to Kelley (Kelley was the one who obtained the Award and had the power to seek court enforcement of it); and (3) redressable by this Court (the Judgment relieved TDA of its obligation to comply with the Award, thereby redressing the injury).

True, the arbitrated dispute were Kelley's claims for "willful interference with a property interest and fraud[]," torts which did not give rise to federal question jurisdiction.  *See* Pet. to Vacate Ex. A.  And while TDA's § 10 petition does allege that the arbitrator rendered the Award in manifest disregard of the law, the petition could be viewed as essentially pleading a federal defense proactively, which is insufficient to confer federal question jurisdiction.  *See* Pet. to Vacate ¶ 2 ("This Court has jurisdiction pursuant to 28 U.S.C. § 1331[] in that the Award of the arbitrator would, if confirmed and implemented, cause a violation of [federal securities laws and

regulations]"); *Vaden*, 556 U.S. at 70.  The Court need not decide whether TDA's § 10 petition presented federal question jurisdiction, however, because the Court had diversity of citizenship jurisdiction.  TDA is a citizen of New York and Nebraska, Kelley is a citizen of South Carolina, and the amount in controversy exceeded $75,000.  *See* Pet. to Vacate, ECF No. 1 ¶¶ 4, 6, 7; *see also id.* at ¶ 16 (alleging that TDA's expected damage from the Award was "as much as $190,000"); Respondent's Objection 3, ECF No. 5.  Thus, because there was complete diversity between the parties and the amount in controversy requirement was satisfied, the Court had diversity jurisdiction to entertain TDA's § 10 petition, as well as Kelley's cross-petition to confirm the award, and thus had subject matter jurisdiction to render the Judgment vacating the Award.

And Kelley's claims against TDA were arbitrable.  Judge Swain twice rejected Harris' argument that arbitration is not available for claims which seek to compel TDA to give customers physical certificates of their Bancorp shares—arguments which Harris recycles here. *See Harris*, 338 F. Supp. 3d at 174; *Harris*, 2020 WL 3073235, at *3, *aff'd*, 2021 WL 772269 (2d Cir. Mar. 1, 2021).  In the Harris Action, Harris argued that her agreement to arbitrate with TDA was void *ab initio* because it allows TDA to avoid its obligations under the Exchange Act of 1934 or the rules and regulations thereunder.  No. 17-cv-6033, Mot. to Suppl. Compl. 4, ECF No. 86.  Harris also argued that SEC Rule 15c3-3 gives her an equitable cause of action in federal court.[5]  *Id.* at 6–9.  Harris raises those same arguments here, in her Motion.  Judge Swain impliedly rejected the former argument (No. 17-cv-6033, Order on Mot. for Misc. Relief, ECF No. 92) and expressly rejected the latter (*Harris*, 2020 WL 3073235, at *3).  In affirming Judge

---

[5] In her Motion, Harris acknowledges that SEC Rule 15c3-3 does not create a private cause of action.  Motion 7 n.10.

Swain's dismissal of the Harris Action, the Second Circuit wrote that "authorities have uniformly

held that SEC Rule 15c3-3, upon which Harris purported to rely, does not create a private right

of action. . . . Although this Court has not ruled on that question (and we decline to do so now),

the district court did not abuse its discretion in denying leave to add such a claim." *Harris*, 2021

WL 772269, at *2 (citations omitted).  This Court likewise finds Harris' arguments to be without

merit.  Kelley's claims against TDA were arbitrable, and the Court had subject matter

jurisdiction over the Kelley Action.

Second, the Judgment does not rewrite federal law.  Instead, it upholds the well-founded

rule, "derived from the common law doctrine of refusing to enforce a contract that violates law,"

*Pro's Choice Beauty Care, Inc. v. Local 2013, United Food & Commercial Workers*, No. 16-cv-

2318 (ADS) (ARL), 2017 WL 933089, at *2 (E.D.N.Y. Mar. 7, 2017) (citation omitted), which

allows courts to vacate arbitration awards that require a party to violate the law.  *Id.*; *see also*

*Perma-Line Corp. of Am. v. Sign Pictorial & Display Union, Local 230, Int'l Bhd. of Painters &*

*Allied Trades, AFL-CIO*, 639 F.2d 890, 895 (2d Cir. 1981); *Dorscher*, 832 F.3d at 375 n.3

(explaining that after *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) held that §

10 supplies the exclusive grounds for vacating an arbitration award, the Second Circuit "held that

'manifest disregard of the law' is a 'judicial gloss' on § 10 that permits vacatur.'") (citation

omitted).

Accordingly, the Judgment is not void.  Finding Harris' remaining arguments

unpersuasive, the Court also declines to set the Judgment aside under Rule 60(b)(5) *sua sponte*

on the ground that it is no longer prospectively equitable.

## <u>CONCLUSION</u>

Because Harris' Motion is untimely and her intervention would unduly prejudice TDA, and because granting Harris non-party standing to bring Rule 60(b) motions is unwarranted, Harris' Motion is DENIED.  Because the Court finds no valid reason to vacate the Judgment on its own motion, the Judgment will stand undisturbed.  The Clerk of Court is directed to close the motion at ECF number 70.


Dated: New York, New York                    SO ORDERED
       March 10, 2021

                              _____

                              HONORABLE PAUL A. CROTTY
                              United States District Judge